# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

ON MOTION FOR REHEARING

NO. 03-12-00535-CV

**Tommy Adkisson, Individually, and Officially on Behalf of Bexar County, Texas as County Commissioner Precinct 4, Appellant**

**v.**

**Ken Paxton, Attorney General of Texas; and Hearst Newspapers, LLC, Appellees**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-10-002120, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

**O P I N I O N**

We withdraw the opinion and judgment dated June 13, 2014, and substitute the following opinion and judgment in their place. We deny appellant's motion for rehearing.

Tommy Adkisson appeals, both individually and on Bexar County's behalf in his official capacity as Bexar County Commissioner Precinct 4, from the trial court's summary judgment declaring that he must disclose certain records requested under the Texas Public Information Act (PIA). *See generally* Tex. Gov't Code §§ 552.001-.353. Commissioner Adkisson contends that the requested information is not public information. The requestor, appellee Hearst Newspapers, LLC, sought correspondence from Commissioner Adkisson's personal e-mail accounts related to his

official capacity as a county commissioner or as chairman of the San Antonio-Bexar County Metropolitan Planning Organization, or both.

The Commissioner sued the Attorney General for declaratory relief from the Attorney General's letter rulings that the information is public and must be released.[1] *See id.* § 552.324 (establishing that governmental body seeking to withhold information from a requestor may only file suit seeking declaratory relief from compliance with decision by attorney general). Hearst intervened in the lawsuit, seeking a writ of mandamus under the PIA. *See id.* §§ 552.321 (permitting requestor to sue for writ of mandamus compelling governmental body to make information available to public), .325 (providing that requestor is entitled to intervene in suit filed by governmental body seeking declaratory relief allowing it to withhold information). Hearst also sought declaratory relief and attorneys' fees under both the PIA and the Uniform Declaratory Judgments Act. *See id.* §§ 552.3215 (permitting suit for declaratory judgment or injunctive relief against governmental body that is withholding information), .323 (establishing circumstances under which courts may or shall award attorneys' fees); Tex. Civ. Prac. & Rem. Code §§ 37.003 (establishing power of courts to declare rights, status, and other legal relations), .009 (allowing court to award "equitable and just" attorneys' fees). The Commissioner, the Attorney General, and Hearst each moved for summary judgment and sought attorneys' fees.

The trial court denied the Commissioner's motion and granted the Attorney General's and Hearst's motions and awarded attorneys' fees to the Attorney General and to Hearst. We will

---

[1] Greg Abbott was the Attorney General of Texas when the Commissioner filed suit. Abbott's successor, Ken Paxton, has been automatically substituted as a party defendant. *See* Tex. R. App. P. 7.2(a).

affirm the judgment because we conclude that information in the Commissioner's official-capacity e-mails is necessarily connected with the transaction of the County's official business and the County owns the information under the Local Government Code; thus, the requested information satisfies the PIA's definition of "public information." In addition, we conclude that the trial court acted within its discretion by awarding attorneys' fees to the Attorney General and Hearst. However, we will modify the trial court's judgment to clarify that only Bexar County, the governmental entity on behalf of which the Commissioner filed suit in his official capacity and against which Hearst filed its suit, is liable for the attorneys' fees awarded under the PIA to the Attorney General and Hearst.

## BACKGROUND

Hearst is the publisher of the *San Antonio Express-News*. An *Express-News* reporter requested information under the PIA from the Commissioner by submitting an open-records request to the County. The reporter requested copies of certain e-mail correspondence "related to [the Commissioner's] official capacity as a county commissioner and/or chairman of the [Metropolitan Planning Organization]." Although the request sought correspondence from both the Commissioner's personal e-mail accounts and his County e-mail account, it explicitly stated that the *Express-News* sought only "relevant documents from Commissioner Adkisson's official capacity, not personal correspondence."

Soon after Hearst requested documents from Bexar County, the Metropolitan Planning Organization received a request from a different requestor seeking all correspondence between the Commissioner, other named County Commissioners, and certain county employees on both work and home communication devices when used in official capacity. The Metropolitan Planning

3

Organization, in turn, requested the information from Bexar County. The San Antonio-Bexar County Metropolitan Planning Organization is an organization charged with developing and maintaining a comprehensive regional transportation planning process.[2] Its Transportation Policy Board provides transportation policy and planning guidance. A number of regional elected and appointed officials are on the Board. At the time of the PIA requests, the Commissioner served on the Board as one of the Bexar County representatives and was the Board Chair.

Bexar County sought letter rulings from the Attorney General for both requests.[3] *See* Tex. Gov't Code § 552.301 (requiring governmental body that receives written request for information that it wishes to withhold from public disclosure to ask for attorney general decision). The County contended that any correspondence in the Commissioner's personal e-mail accounts, regardless of its content, is not public information as defined by the PIA because it was not either collected, assembled, or maintained by the governmental body or prepared on behalf of the governmental body and the governmental body did not have a right of access to the correspondence. The County asserted that it was not submitting a representative sample of any requested correspondence because to do so would require the County to search a computer at the Commissioner's private residence to compile the requested correspondence, which would infringe upon the Commissioner's legitimate expectation of privacy and his constitutional rights not to be subject to a search warrant without probable cause. The County's two requests for rulings from the Attorney General were

---

[2] This background information about the San Antonio-Bexar County Metropolitan Planning Organization was provided in Adkisson's summary-judgment motion and appears to be uncontested.

[3] The Attorney General issued substantively similar letter rulings for both requests, reaching the same conclusion in both. Likewise, our analysis applies to both requests.

4

substantively the same, except that in the second request the County also asserted that the information might be excepted from disclosure under Sections 552.101 (based on case law related to common-law privacy), 552.109, 552.111, and 552.137 of the PIA. *See id.* §§ 552.101 (excepting from disclosure information considered to be confidential by law, including judicial decision), .109 (excepting from disclosure elected official's private correspondence or communications related to matters which would constitute invasion of privacy if disclosed), .111 (excepting from disclosure interagency or intra-agency correspondence that would not be available by law to party in litigation with agency), .137 (excepting from disclosure e-mail address of member of public that is provided for purpose of communicating electronically with governmental body).

The Attorney General determined that the requested information comes "within the scope of the [PIA] if it relates to the official business of a governmental body and is maintained by a public official or employee of the governmental body." Relying on the statutory language and prior open records decisions, the Attorney General explained that information in a public official's personal records may be subject to the PIA if the public official uses the records to conduct public business: "A governmental body may not circumvent the applicability of the [PIA] by conducting official public business in a private medium." Accordingly, the Attorney General ruled that:

> [T]o the extent the e-mails maintained by the county Commissioners and county employees relate to the official business of the county, they are subject to the [PIA]. To the extent the county Commissioners' and county employees' e-mails do not relate to the official business of the county, they are not subject to the Act and need not be released.

5

The Attorney General also addressed the County's contention that it could not search for or produce a representative sample of documents without infringing upon the County Commissioners' and County employees' constitutional rights. The Attorney General disagreed with the County's assertion that searching for the requested documents would require the County's district attorney to search the computers at the County Commissioners' and County employees' private residences. The Attorney General explained that under the PIA, each elected county officer is the officer for public information and the custodian of information created or received by that county officer's office, meaning that the County Commissioners are the public-information officers and custodians of information created or received by their respective offices. *Id.* § 552.201(b). After an officer for public information is notified of a request for public information that he maintains, he has a duty to provide it to the requestor unless the attorney general rules that it may be withheld. *Id.* §§ 552.203(1), .204, .221, .301, .353. Thus, the Attorney General further explained, to comply with the PIA, "[t]he only requirement is that the county Commissioners, who maintain the information at issue, collect 'public information' maintained in their personal e-mail accounts as the [public-information officer and] custodian of records for his or her office." *See id.* §§ 552.201, .203, .353. In other words, the Attorney General concluded that nothing in the PIA required the Commissioner to allow the County unfettered access to his personal e-mail accounts.

The Attorney General determined that the County failed to comply with the requirements of the PIA because it did not submit either (1) written comments stating the reasons why the stated exceptions to disclosure apply or (2) a copy of the specific information requested or representative samples of the information. *See id.* § 552.301(e)(1)(A), (D). The Attorney General

6

opined that the County's failure to provide the Attorney General's office with the information required in Section 552.301(e) results in a legal presumption that the requested information is public and must be released. In addition, the Attorney General stated that because the County failed to submit the requested information to the Attorney General's office for review, he had no basis for finding any of the information confidential by law under any of the exceptions raised by the County.

After the Attorney General issued the ruling that the requested e-mails were public information under the PIA "to the extent that they relate to the official business of the county," the Commissioner filed suit to challenge the ruling on behalf of himself in his individual capacity and on behalf of the County—i.e., the governmental body seeking to withhold information from the requestor—in his official capacity as County Commissioner. Hearst intervened, and as noted above, all three parties filed summary-judgment motions addressing the issue of whether the requested official-capacity e-mail correspondence held by the Commissioner in personal e-mail accounts is "public information" as defined by the PIA.

The trial court denied the Commissioner's motion, granted the Attorney General's and Hearst's motions, and awarded attorneys' fees to the Attorney General and Hearst. The Commissioner appeals from this final judgment.

**ANALYSIS**

The Commissioner challenges the trial court's judgment in four issues, contending that (1) the e-mail in his private e-mail accounts is not subject to the PIA because the e-mail was not collected, assembled, or maintained either by a governmental body or for a governmental body that owned the information or had a right of access to the information; (2) the Attorney General

7

inappropriately relied on the Local Government Code to conclude that private e-mail is subject to the PIA; (3) the Attorney General's content-based approach to analyzing what constitutes public information is not supported by the statute's plain language, creates absurd results, confuses and expands the public-information officer's responsibilities, and infringes on public servants' Fourth Amendment constitutional rights; and (4) final judgment was inappropriate because the Attorney General's and Hearst's motions did not dispose of all claims before the trial court, and the trial court erred by awarding attorneys' fees and costs to appellees. The Commissioner's first three issues support his central contention that the requested official-capacity e-mail correspondence held in his personal e-mail accounts is not public information as defined by the PIA. To decide this question, we must construe the PIA's definition of "public information," as well as the Local Government Code's provisions related to ownership of local government records. Accordingly, we consider the Commissioner's first three arguments together and in the context of our construction of the applicable statutes.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). In this case, the three motions filed were essentially cross motions, with the Commissioner on one side and Hearst and the Attorney General on the other. On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one side's motions and denies the other side's motion, as here, we review the summary-judgment evidence presented by both sides, determine all questions

8

presented, and if we find that the trial court erred, we render the judgment that the trial court should have rendered. *See id.* at 356-57.

All three parties moved for summary judgment on the legal question of whether the requested information is public information that must be released under the PIA. In particular, the Commissioner argued that (1) the Commissioner's privately held e-mail is not "public information" as defined by the PIA; (2) Bexar County and Precinct 4 did not and do not "collect, assemble, or maintain" the information sought; the information sought was not held "by or for" the County or Precinct 4; and Bexar County and Precinct 4 do not "have access or a right of access" to the Commissioner's individually held private e-mail; and (3) the Commissioner is an individual, not a "governmental body" as that term is defined by the PIA, and thus, the PIA is inapplicable to individually held information. The Attorney General moved for summary judgment on the ground that the Commissioner's personal e-mails at issue are information connected to the transaction of official county business and are public information. Hearst also moved for summary judgment on the ground that e-mail conducting government business in non-County accounts is subject to disclosure under the PIA.

In general, matters of statutory construction are legal questions, and "[s]pecifically, whether information is subject to the [PIA] and whether an exception to disclosure applies to the information are questions of law" that we review de novo. *Id.* at 357; *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (explaining that appellate review of legal question of statutory construction is de novo). Our primary objective when construing statutes is to give effect to the Legislature's intent, which we seek first and foremost in the text of the statute. *First Am. Title Ins.*

9

*Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008). The plain meaning of the text is the best expression of legislative intent, unless a different meaning is apparent from the context or application of the plain language would lead to absurd results. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). When a statute's words are unambiguous, "it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008).

**The PIA**

The PIA's purpose is to provide the public with access to complete information about government affairs and the official acts of public officials and employees. Tex. Gov't Code § 552.001(a); *Jackson v. State Office of Admin. Hearings,* 351 S.W.3d 290, 293 (Tex. 2011). In support of this purpose, the PIA directs that it be liberally construed in favor of disclosure of requested information. *See* Tex. Gov't Code § 552.001; *Jackson,* 351 S.W.3d at 293. When public information is requested from a governmental entity, it must be promptly produced for inspection, duplication, or both. Tex. Gov't Code § 552.221 (requiring prompt production of public information). The PIA contains a non-exclusive list of categories of public information, *see id.* § 552.022, as well as certain specific exceptions from required disclosure, *see id.* §§ 552.101-.154.

If a governmental body considers the requested information exempt from disclosure, and there has been no previous determination about the requested information, the governmental body must submit to the attorney general written comments stating why any claimed PIA exceptions apply and must request an opinion from the attorney general about whether the information falls within the claimed PIA exceptions. *Id.* § 552.301; *City of Houston v. Houston Chronicle Publ'g Co.,*

10

673 S.W.2d 316, 323 (Tex. App.—Houston [1st Dist.] 1984, no writ) ("Where the custodian thinks that information is not public, and there has been no previous applicable decision it must be submitted to the Attorney General for a decision or it will be presumed to be public information."). The governmental body must also submit a copy of the specific information requested or submit representative samples of the information, if a voluminous amount of information was requested. Tex. Gov't Code § 552.301. If the governmental body does not timely request an attorney general opinion as provided in Section 552.301, the information is presumed public. *Id.* § 552.302.

If the attorney general determines that the requested information must be disclosed to the requestor, the governmental body may seek declaratory relief from compliance with the decision. *Id.* § 552.324. In addition, the requestor or the attorney general may seek mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to supply information that the attorney general has determined is public information not excepted from disclosure. *Id.* § 552.321. The PIA also contemplates that an "officer for public information or other person or entity" may file "a suit seeking to withhold information from a requestor," but they may not file suit against the requestor. *Id.* § 552.325(a). In an action brought under Section 552.321, the PIA requires the trial court to assess costs of litigation and reasonable attorneys' fees incurred by a plaintiff (i.e., the requestor or attorney general) who substantially prevails, unless the court finds that the governmental body acted in reasonable reliance on (1) a judgment or court order applicable to the governmental body; (2) the published opinion of an appellate court; or (3) a written decision of the attorney general. *Id.* § 552.323(a). In an action brought under Section 552.324, the court may assess costs of litigation and reasonable attorneys' fees

11

incurred by a plaintiff (i.e., the governmental body) or defendant (i.e., the attorney general) who substantially prevails. *Id.* § 552.323(b). In exercising its discretion under this subsection, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith. *Id.*

**Public information**

The central question in this case is whether official-capacity e-mails held by the Commissioner in his personal e-mail accounts are public information as defined by the PIA. The Commissioner contends that e-mails held in personal accounts can never be public information, regardless of their content. The PIA defines "public information" as:

> information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:
>
> (1)     by a governmental body; or
>
> (2)     for a governmental body and the governmental body owns the information or has a right of access to it.[4]

Former Tex. Gov't Code § 552.002(a); *see also In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001) (orig. proceeding) ("'Public information' is broadly defined in the Act . . . ."). If the information in the official-capacity e-mails contained in the Commissioner's personal e-mail

---

[4] This is the version of Section 552.002 that was in effect when the PIA requests at issue here were made in 2010. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 2, sec. 552.002, 1995 Tex. Gen. Laws 5127, 5127. The Texas Legislature amended the statute in 2013. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1204, § 1, sec. 552.002, 2013 Tex. Sess. Law Serv. 3012, 3012-13 (West) (amending definition of "public information"). We refer to the prior version as "former" Section 552.002 for convenience.

12

accounts 1) is collected, assembled, or maintained for the County; 2) is connected "with the transaction of official business" for the County; and 3) the County either owns or has a right of access to the information, then the information is public information under the statutory definition.[5] We address these dispositive components of the definition below.

### 1) Information held in connection with the transaction of official business

As a preliminary matter, we must clarify the meaning of the terms used by all the parties. The requests sought only "official-capacity e-mails." Specifically, the requests sought e-mails between Commissioner Adkisson and two citizens "*related to [Adkisson's] official capacity as a county commissioner and/or chairman of the [Metropolitan Planning Organization]*" and all correspondence between Commissioner Adkisson and six other people from devices "*used in official capacity*." (Emphases added.) In addition, Hearst's request explicitly excluded "e-mails of a personal nature." The Attorney General's letter ruling declared that to the extent the requested e-mails "relate to the official business of the county," the County must release the information. The PIA definition refers to information retained "in connection with the transaction of official business." Thus, we must determine whether "official-capacity e-mails" that "relate to the official business of the county" are information held "in connection with the transaction of official business."

---

[5] The Commissioner does not appear to dispute that all information in his personal e-mail accounts was "collected, assembled, or maintained" in those accounts or that there is any difference between the three terms that is significant to the issue of whether the official-capacity e-mails are public information. Instead, he focuses on whether the official-capacity e-mails were collected, assembled, or maintained *for* Bexar County and whether Bexar County owns or has a right of access to the official-capacity e-mails. Thus, we use the terms "collected, assembled, or maintained" interchangeably for purposes of this opinion, along with the terms "held" or "retained."

13

We first consider the meaning of the non-statutory terms at issue because we must determine whether the statutory definition of "public information" encompasses the requested information that the Attorney General ordered disclosed. We begin by examining the meaning of "official capacity" and "official business." "Official" means "belonging or relating to an office, position, or trust: connected with holding an office," while "capacity" is defined as "position, character, or role" and "business" means "affair, matter." *Webster's Third New Int'l Dictionary* 302 ("business"), 330 ("capacity"), 1567 ("official") (2002). In this case, then "official capacity" means relating to the Commissioner's office or position as Bexar County Precinct 4 County Commissioner, which includes the position he holds on the Metropolitan Planning Organization as a Bexar County representative. E-mails sent or received in his official capacity would thus mean e-mails sent or received that are related to his County government position as Commissioner. Similarly, "official business" means an affair or matter related to his County government role.[6] "Relates to," which is part of the meaning of "official capacity" and "official business," in addition to being used in the Attorney General's ruling, means "to have a connection with, to refer to, or to concern" and is very broad in its ordinary usage. *Texas Dep't of Pub. Safety v. Abbott*, 310 S.W.3d 670, 674-75 (Tex. App.—Austin 2010, no pet.). Accordingly, information in "official-capacity e-mails" that "relate to the official business of the county" is information in e-mails sent or received in Adkisson's role

---

[6] This meaning is consistent with the definition provided by the Legislature when it amended the PIA in 2013. The term "official business" had not been defined in the prior version of the statute. In the amended version of the statute, "'[o]fficial business' means any matter over which a governmental body has any authority, administrative duties, or advisory duties." *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1204, § 2, sec. 552.003, 2013 Tex. Sess. Law Serv. 3012, 3013 (West) (adding definition of "official business") (current version at Tex. Gov't Code § 552.003(2-a)).

as Commissioner that is connected with, refers to, or concerns an affair or matter that he is involved with in his County government role.

Next, we turn to the statutory language at issue and examine the plain meaning of the phrase "information [held] in connection with the transaction of official business." *See Molinet*, 356 S.W.3d at 411. We consider the entire act when determining the Legislature's intent with respect to specific statutory provisions, *see Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011), and we read words and phrases in context and construe them according to the rules of grammar and common usage, Tex. Gov't Code § 311.011.

As discussed above, "official business" means an affair or matter related to the Commissioner's County government role as Commissioner. The key word remaining to be analyzed is "transaction." "Transaction" means "an act, process, or instance of transacting: as a communicative action or activity involving two parties or two things reciprocally affecting or influencing each other." *Webster's Third New Int'l Dictionary* 2425 (2002). While the word "transaction" has more than one dictionary definition, this meaning is the only one that is reasonable when considered in the context of the PIA as a whole. *See Gulf Metals Indus. v. Chicago Ins. Co.*, 993 S.W.2d 800, 806 (Tex. App.—Austin 1999, pet. denied). The PIA's express purpose is to provide the public with "complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code § 552.001(a). When viewed in light of this purpose, "the transaction of official business" must include communications involving two parties that reciprocally affect or influence each other in a matter related to official business. *See City of Garland*, 22 S.W.3d at 359 (concluding that draft prepared by city employee was public information because it was used "in

15

connection with transacting official business" when city manager circulated it to city council and used it to consult with council about how to handle a personnel problem, "a decision involving the City's official business").

The Commissioner argues that the mere creation of a document is not transacting official business. He relies on *City of Garland* for the proposition that the document must be used in connection with the transaction of official business in order to be considered "public information" under the PIA. *See id.* He contends that summary judgment was improper because the Attorney General and Hearst have not presented evidence that the requested e-mails were used in the transaction of official County business.[7] In a PIA case, however, the governmental body (here, the County represented by the Commissioner in his official capacity) seeking to withhold information bears the burden of demonstrating that the requested information is either not public information or falls within an exception from disclosure under the PIA. *See Thomas v. Cornyn*, 71 S.W.3d 473, 480-81, 488 (Tex. App.—Austin 2002, no pet.) (explaining that placement of burden of proof upon

---

[7] The Commissioner also asserts in his reply brief that he has never admitted that the requested e-mails related to his official capacity as a county commissioner or Chairman of the Metropolitan Planning Organization relate to or were used in the transaction of official business of Bexar County. We note that his counsel conceded at the summary-judgment hearing, when pressed on the issue by the trial judge, that the Commissioner never unequivocally stated in any response or pleading that there were no existing communications in his personal accounts related to official business of the County, Precinct 4, or the Metropolitan Planning Organization. It is unclear why the Commissioner continues to equivocate about the existence of responsive e-mails on appeal. It is not the Attorney General's or the requestor's burden to prove that responsive e-mails exist. If the Commissioner has no e-mails related to the transaction of official business in his personal e-mail accounts, then there would have been no need for him to file suit seeking declaratory relief from the Attorney General's rulings requiring the information to be released. Thus, we proceed on the assumption that the Commissioner has e-mails related to the transaction of official business in his personal e-mail accounts.

16

governmental body in judicial proceeding is consistent with PIA's strong policy favoring disclosure of public information and PIA's placement of burden on governmental body when seeking open-records determination from attorney general).

The holding in *City of Garland* supports the definition of "information [held] in connection with the transaction of official business" as including communications involving parties that reciprocally affect or influence each other in a matter related to official business. While the court did state that "the mere creation of a *draft* is not transacting official business," it further explained that a draft document "used in connection with transacting official business" becomes public information. 22 S.W.3d at 359 (emphasis added). The court held that a draft document that was circulated to the city council and used when considering a matter involving official city business was a document "used in connection with transacting official business." *Id.* In this case, a draft e-mail that was never sent to anyone would not be public information, but e-mail correspondence between the Commissioner in his official capacity and other people discussing County government matters that he is involved with is information used in connection with transacting official business. To conclude otherwise would lead to the absurd result that the Commissioner could conduct all his official County business correspondence through his personal e-mail accounts without it being subject to the PIA, even if the same correspondence would be subject to the PIA if he used his County e-mail account.

Although the Attorney General's determination that the Commissioner should release e-mails that "relate to the official business of the county" sounds, when first considered, as if it would encompass a broader scope of information than e-mails retained "in connection with

17

the transaction of official business," when the Attorney General's phrase is considered in the context of the request for "official-capacity e-mails," it becomes clear that the Attorney General's phrase has the same meaning here as the statutory phrase. Applying the terms' plain meaning, the Attorney General decided that the Commissioner should release e-mails retained in his personal e-mail accounts that are related to his office or role as Commissioner and that have a connection with, refer to, or concern County business that Adkisson is involved with in his role as Commissioner. These e-mails sent or received in the Commissioner's official capacity that are connected with County business that the Commissioner is involved with are transactions of official business because they are communications involving two parties that reciprocally affect or influence each other. In other words, if the Commissioner is communicating in his official capacity about official County business, he is "transacting official business" and the communications satisfy the definition of "public information," assuming the other components of the definition are satisfied.

### 2) Information collected, assembled, or maintained for the County and the County owns it

The Commissioner contends that information in his personal e-mail accounts is not information collected, assembled, or maintained for the County and that the County does not own or have a right of access to information in his personal e-mail accounts, even if that information concerns the transaction of official business and his position as Commissioner. We disagree.

The Local Government Code defines a "local government record" as:

> any document . . . regardless of physical form or characteristic and regardless of whether public access to it is open or restricted under the laws of the state, created

18

or received by a local government or any of its officers or employees . . . in the transaction of public business.

Tex. Loc. Gov't Code § 201.003(8). Local government records are subject to the PIA. *Id.* § 201.009. As discussed above, to the extent the Commissioner communicated in his official capacity with others by e-mail in his personal accounts about official business, those e-mails are documents created or received by him in the transaction of public business; thus, they are "local government records." *See id.* § 201.003(8).

The Local Government Code declares these records to be public property subject to the provisions of Title 6, Subtitle C of the Code, which establishes standards for records management, preservation, and access. *See id.* §§ 201.002 (describing purpose of Subtitle C), .005(a) (declaring local government records to be public property). The Code also explicitly states that "[a] local government officer or employee does not have, by virtue of the officer's or employee's position, any personal or property right to a local government record even though the officer or employee developed or compiled it." *Id.* § 201.005(b). In addition, Hearst submitted as summary-judgment evidence the administrative policy establishing the records-management program for the Office of Commissioners Court of Bexar County. That policy defines "records of the Office of Commissioners Court of Bexar County" as:

all documents . . . regardless of physical form or characteristic and regardless of whether public access to the information recorded therein is open or restricted under the laws of the state, *created or received by this office or any of its officers* or employees . . . in the transaction of public business.

(Emphasis added.)  As a result, any local government records collected, assembled, or maintained in the Commissioner's personal e-mail accounts belong to the County, not to the Commissioner in his individual capacity.  Conducting County business through a personal e-mail account instead of through an official County e-mail account does not change the County's ownership of the local government records created or received by the Commissioner as a County government officer.[8]

Having determined that the County owns any information created or received by the Commissioner in the transaction of public business that is contained in the Commissioner's personal e-mail accounts, we must also ascertain whether the information is collected, assembled, or maintained for the County.  *See Murphy v. City of Austin*, No. 03-04-00332-CV, 2005 WL 309203, at *3 (Tex. App.—Austin Feb. 10, 2005, no pet.) (mem. op.) (explaining that right of access alone cannot render information public when determining whether information held by private entity was maintained for governmental body).  The Commissioner argues only that he, as an individual, owns

---

[8] The Commissioner argues that the Local Government Records Act is based on an understanding that the governing body is in physical possession of the local government record and therefore has a responsibility to maintain the record in accordance with the Act's provisions.  *See generally* Tex. Loc. Gov't Code §§ 201.001-205.010.  He contends that if a local government record is in private possession, the record is not automatically subject to the PIA, like other local government records.  Instead, he suggests that some affirmative step must be taken by the governing body to establish access to information and that the governing body must follow the procedures in Section 202.005 of the Local Government Code to recover the record.  *See id.* § 202.005 (establishing process by which governing body may petition district court for return of local government record if person in possession refuses to deliver record on demand).  However, Section 202.005 applies only to "any local government record in private possession created or received by the local government *the removal of which was not authorized by law*."  *Id.* § 202.005(a) (emphasis added).  None of the parties to this case suggest that the Commissioner's decision to conduct County business in personal e-mail accounts was not authorized by law.  Thus, Section 202.005 neither applies to this case, nor leads to the conclusion that a local government record must be in the governing body's physical possession to be subject to the PIA.

the information in his personal e-mail accounts, and Bexar County does not own or possess access to the accounts. We infer that he also argues, therefore, that he is not maintaining any information in those accounts for Bexar County. Separate from any arguments about ownership or right of access, we must determine whether County-owned information held by the Commissioner in his personal e-mail accounts is information held for the County. *See id.*

The Commissioner, as an elected Bexar County officer, "is the officer for public information and the custodian, as defined by Section 201.003, Local Government Code, of the information created or received by that county officer's office." Tex. Gov't Code § 552.201(b); *see also* Tex. Loc. Gov't Code § 201.003(2) (defining "custodian" as "the appointed or elected public officer who by the state constitution, state law, ordinance, or administrative policy is in charge of an office that creates or receives local government records"). Accordingly, he is charged with the statutory duty of acting for the County as the public-information officer and custodian of information for his County office. Tex. Gov't Code § 552.203 (establishing public-information officer's duty to protect public information and make it available for public inspection and copying); *see also* Tex. Loc. Gov't Code § 203.002 (duties and responsibilities of elected county officers as records-management officers). In other words, as Commissioner, he is responsible for maintaining public information created or received by him or by his employees or his office—no matter where that information is physically created or received—*for the County*. *See* Tex. Loc. Gov't Code § 201.003(8) (defining "local government record" to include documents created or received by a local government or any of its officers or employees in the transaction of public business, "regardless of physical form or characteristic and regardless of whether public access to it is open or restricted

21

under the laws of this state"). Consequently, we conclude that the requested information, which is owned by the County, is information collected, assembled, or maintained for the County.[9]

To summarize, under these circumstances, official-capacity e-mails related to official County business are necessarily information held in connection with the transaction of official business, and this information is held for the County, which owns it. Thus, it satisfies the PIA's definition of "public information." Accordingly, we overrule the Commissioner's first three issues.

### 3)      Common-law privacy

In his fourth issue on appeal, the Commissioner contends that the summary judgment was not final because it did not dispose of all claims before the trial court. He asserts that now that the information has been determined to be public, the trial court must still determine whether the information is excepted from disclosure under PIA Section 552.101 and the doctrine of common-law privacy. Hearst and the Attorney General assert that the Commissioner waived his claim to any exceptions by failing to provide a representative sample of documents for the Attorney General to

---

[9] The Commissioner makes a variety of arguments to the effect that his County Commissioner's office is a separate governmental body from the County, and therefore, the County does not own or have a right of access to information collected, assembled, or maintained by his office. Bexar County is a governmental body and the Commissioner is a County officer who brought this lawsuit on the County's behalf. Having determined that the requested information is held for the County, which owns it, we need not decide whether the Commissioner individually is a governmental body or whether his County Commissioner's office is a separate governmental body from the County. *See* Tex. R. App. P. 47.1. Likewise, we need not determine whether each individual county commissioner's office is part of the larger governmental body that is the Bexar County Commissioners Court and whether information held by the Commissioner is his official County government role is information held "by" a governmental body, as opposed to "for" a governmental body that owns it. *See* Tex. Gov't Code § 552.003(1)(A)(ii) (defining "a county commissioners court in the state" as a "governmental body"); *see also* Tex. R. App. P. 47.1.

22

consider, by failing to raise the issue in response to their summary-judgment motions, and by refusing to provide the records to the trial court for in camera review.

In this case, the Commissioner sought declaratory relief from compliance with the Attorney General's ruling that the requested information is public information under the PIA and must be released. *See* Tex. Gov't Code § 552.324. Hearst and the Attorney General moved for summary judgment on the sole ground that the requested information is public information as defined by the PIA, and thus, must be released. The Commissioner also moved for summary judgment on the same issue, contending that the information is not subject to the PIA, and therefore, it is not required to be released. When both sides move for summary judgment, each side must carry its own burden as the movant, and also as the nonmovant, in response to the other side's motion. *See City of Garland,* 22 S.W.3d at 356. Once Hearst and the Attorney General established the elements of their claim as a matter of law, the burden shifted to the Commissioner as nonmovant to expressly state any reasons seeking to avoid summary judgment and to produce any summary-judgment evidence raising a fact issue that would preclude the release of the documents. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). To the extent the Commissioner contends that even if the information is public, it is excepted from disclosure under the PIA based on the doctrine of common-law privacy, it was his burden to raise this argument in response to Hearst's and the Attorney General's summary-judgment motions and to produce summary-judgment evidence to support his contention.

In his response to Hearst's and the Attorney General's summary-judgment motions, the Commissioner contended that he has a right to privacy that protects the requested e-mail, which

23

is located in a personal account.[10]  In support, he relied on the United States Supreme Court decision in *City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010), for the proposition that a federal right to privacy exists in a governmental workplace.  *See Quon*, 560 U.S. at 756 (exploring contours of government employees' reasonable expectation of privacy in workplace in case involving assertion by government employer in certain circumstances of right to read text messages sent and received by employee on employer-owned pager).  The Commissioner never articulated, however, in his summary-judgment response or on appeal, the scope of the privacy protection covering the e-mails at issue in this case.  The Supreme Court's opinion in *Quon* does not establish a broad right to privacy that would necessarily protect public information contained in a government official's personal e-mail account.[11]  Here, as in *Quon*, it would not be reasonable for the Commissioner to conclude that his communications were in all circumstances immune from scrutiny.  *See id.* at 762

---

[10]  The County had also raised the issue of common-law privacy in its requests for letter rulings.  In the County's first request for a letter ruling from the Attorney General, it explained that it had not submitted a representative sample of responsive e-mails contained in the Commissioner's personal e-mail accounts because of the County's conclusion that the Commissioner has a legitimate expectation of privacy in his home and home computer and because no probable cause existed for a search and a warrantless search would violate his rights under the United States and Texas Constitutions.  The County claimed no exceptions to disclosure, however, arguing only that the information was not "public information" as defined by the PIA.  In the County's second request for a letter ruling from the Attorney General, it reiterated its reasoning for not submitting a representative sample of documents, but it also asserted a number of exceptions to disclosure.  One of those asserted exceptions was Section 552.101.  *See* Tex. Gov't Code § 552.101.  The County stated that it believed that this exception protected information "held confidential under case law as it pertains to common-law privacy."

[11]  In fact, the Court specifically declined to establish the scope of a government employee's privacy expectations in electronic communications.  *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 759 (2010).  Instead, it determined that the search of Quon's pager was reasonable, even assuming Quon had a reasonable expectation of privacy, *id.* at 756-57, 764-65, explaining that "the extent of an expectation is relevant to assessing whether the search was too intrusive," *id.* at 762.

(explaining that Quon had limited privacy expectation because he knew his messages were subject to auditing, and as law-enforcement officer, he would or should have known that his actions were likely to come under legal scrutiny, resulting in analysis of his on-the-job communications).

The only summary-judgment evidence that the Commissioner relied on to support his privacy argument was the County administrative policies concerning computer-resources use that Hearst had submitted as summary-judgment exhibits. The Commissioner asserted that these policies support summary judgment in his favor because they provide that employees retain their rights to privacy "as may be provided by state or federal law." Standing alone, this phrase in the policies does not raise a fact issue concerning the Commissioner's asserted privacy expectation in the requested e-mails—the scope of which he has never articulated under either state or federal law. If anything, the policies (which were approved by the Commissioners Court) demonstrate that County employees have a limited privacy expectation in their e-mail communications. The policies state that "*[E]mployees have no right to privacy with regard to e-mail or Internet access*, except as may be provided by state or federal law." (Emphasis added.) They also provide that the employees' e-mail and other communications may be viewed and monitored.[12]

---

[12] The full provision reads as follows:

[E]mployees have no right to privacy with regard to e-mail or Internet access, except as may be provided by state or federal law. Subject to such laws, the Office/Department Official has the right to view an employee's e-mail, Internet access records, and all other communications and documents sent, received, accessed, transferred, generated or downloaded on County owned and leased computer equipment. This rule applies to personal email accounts that have been accessed using County resources. For security and network maintenance purposes, authorized individuals within the Office/Department may monitor equipment,

When the Commissioner voluntarily took on his elected office, including his role as the public-information officer for his office, he relinquished some of the privacy expectations of a private citizen, at least in connection with his work as a County Commissioner. As an elected County official and the public-information officer for his County office, the Commissioner would or should have known that documents created or received by him, his employees, or his office in the transaction of public business were records potentially subject to review under the PIA or for any variety of other reasons, regardless of where they are physically located. *See Quon*, 560 U.S. at 762. While the Commissioner may have some reasonable expectation of privacy in his personal information, there is no right to privacy protecting public information or local government records merely because the Commissioner has maintained that information in his personal e-mail accounts. Moreover, in this particular case, the Commissioner's privacy interest in his personal information is not implicated at all because the Commissioner, as the public-information officer for his office, is the person responsible for searching for and releasing responsive information from his own e-mail accounts.[13] The County policies that the Commissioner relied on as summary-judgment evidence

---

systems and network traffic at anytime. The Office/Department reserves the right to audit networks and systems to ensure compliance with this policy.

This language is found in all four of the policies cited by the Commissioner with one slight exception. Three of the policies were in place at the time of the Attorney General's rulings. The fourth policy is a revised policy, which the Commissioners Court passed and approved on June 29, 2010, approximately one month after the Attorney General first ruled that the requested e-mails are public information. The revised version omits the sentence, "This rule applies to personal email accounts that have been accessed using County resources."

[13] In a related argument on appeal supporting his proposed interpretation of the definition of "public information," the Commissioner also asserts that interpreting the PIA and the Local Government Code to require the public-information officer to collect and review potentially responsive information held in a personal e-mail account is an absurd result that violates individual

26

reinforce this conclusion and do not raise an issue of material fact on the Commissioner's argument that the documents should be excepted from disclosure under PIA Section 552.101 and the doctrine of common-law privacy.

To the extent the Commissioner may also be contending that specific responsive e-mails (i.e., e-mails transacting official business) are somehow protected by the common-law privacy doctrine in whole or in part, his failure to explain how the release of documents concerning the transaction of official business could be confidential under this doctrine is fatal to his contention. Information is deemed confidential by law under the common-law privacy doctrine if: (1) the information contains highly intimate or embarrassing facts about a person's *private* affairs, the publication of which would be highly objectionable to a reasonable person; and (2) the information is not of legitimate concern to the public. *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682-83, 685 (Tex. 1976) (interpreting former version of PIA). The Commissioner did not provide any specific examples, either in the affidavit he filed in support of his summary-judgment motion or by submitting documents to the Attorney General (as required under the PIA) or in camera to the trial court, of private information that would be contained in e-mails satisfying

privacy interests and implicates public officials' and employees' Fourth Amendment right to be protected from unreasonable searches. *See* U.S. Const. amend. IV. As noted previously, however, to comply with the requests we are considering in this case, the PIA requires the Commissioner, as the public-information officer for his own office, to search his personal e-mail accounts for responsive e-mails and make the information available for public inspection or copying. Tex. Gov't Code § 552.203(1); *see also id.* § 552.353 (establishing penalties for public-information officer's failure or refusal to provide access to public information). Reviewing and producing copies of his own e-mails raises no privacy or constitutional concerns. On rehearing, the Commissioner urges that he would have to turn over all of his personal e-mails for a determination by the Attorney General about which e-mails are public information. We reiterate that he is only required to provide responsive e-mails.

the definition of public information. *See id.* at 683, 685-86 (deciding that affidavit raised fact issue concerning privacy doctrine when it alleged that claims filed with industrial-accident board contained information about private matters that would cause extreme embarrassment to the injured claimant, including claims related to sexual assault, illegitimate children, pregnancy, psychiatric treatment of mental disorders, injuries to sexual organs, injuries from attempted suicide, and physical or mental abuse by co-employees or supervisors and remanding to trial court for in camera review of requested documents). It was the Commissioner's burden to raise a fact issue precluding release of the documents. Without any evidence to support the Commissioner's claim that the requested information is protected by the common-law privacy doctrine, he has not carried his summary-judgment burden to show that the information is excepted from disclosure under PIA Section 552.101. The trial court's summary judgment disposed of all issues before it and was a final judgment.

### 4) Attorneys' fees

Also in his fourth issue, the Commissioner challenges the trial court's award of costs and attorneys' fees to both the Attorney General and Hearst. The Attorney General sought fees under PIA Section 552.323(b), which governs fee awards in suits under Section 552.324 brought by governmental bodies seeking to withhold information, and Hearst sought fees under PIA Section 552.323(a), which governs fee awards in suits under Sections 552.321 or 552.3215 for writ of mandamus or for declaratory judgment against a governmental body. *See* Tex. Gov't Code § 552.323(a)-(b). The Commissioner contends that (1) the Attorney General is not entitled to costs and attorneys' fees because he is a defendant in the suit, not a plaintiff, *see id.* § 552.323(a); (2) Hearst is not entitled to costs and attorneys' fees because its mandamus petition named only the

28

Commissioner, who is not a governmental body, *see id.* § 552.321; (3) even if Hearst is entitled to costs and attorneys' fees, they should not be awarded because the Commissioner acted in reasonable reliance on a published appellate court opinion, *see id.* § 552.323(a); (4) alternatively, although costs and attorneys' fees may be awarded when a governmental body sues under PIA Section 552.324, the trial court must consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith, and he argues that no evidence of bad faith or lack of reasonable basis in law exists, *see id.* § 552.323(b); and (5) the award of costs and attorneys' fees was premature because the judgment was not final. Addressing the Commissioner's last argument first, we have already determined that the trial court's judgment is a final judgment; therefore, the award of costs and fees was not premature.

We turn next to the dispositive questions concerning the attorneys' fee award: did the trial court abuse its discretion by awarding fees to the Attorney General under Section 552.323(b) and to Hearst under Section 552.323(a)? Section 552.323(b) provides:

> In an action brought under Section 552.324, the court may assess costs of litigation and reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails. In exercising its discretion under this subsection, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.

*Id.* § 552.323(b). The Commissioner contends that the trial court should not have awarded fees to the Attorney General because there is no evidence in the record to support a finding of lack of reasonable basis in law for the County's conduct in withholding the documents or of bad faith in bringing the litigation. The PIA entrusts attorneys' fee awards to the trial court's sound discretion,

29

subject to the requirement that any fees awarded be reasonable and the court's consideration of whether a reasonable basis in law existed for withholding the documents and whether the litigation was brought in good faith. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (analyzing attorneys' fee award under the Uniform Declaratory Judgments Act). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence.[14] *Id.* The trial court's judgment granting or denying attorneys' fees will not be reversed on appeal absent a clear showing that the court abused its discretion. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985).

The Commissioner's position throughout this litigation has been that public business conducted through his personal e-mail accounts can never be public information under the PIA and that he as a Commissioner is not a governmental body and thus is not subject to the PIA. He refers us to a Dallas Court of Appeals opinion and an Attorney General opinion as the reasonable basis in law that he relied on before the trial court. *See City of Dallas v. Dallas Morning News, LP*, 281 S.W.3d 708, 715 (Tex. App.—Dallas 2009, no pet.) (holding that fact issue existed concerning whether e-mails in city officials' personal e-mail accounts are collected, assembled, or maintained by or for city and whether city has right of access to e-mails, precluding summary judgment); Tex. Att'y Gen. OR2000-3105 at n.2 (stating that state senator, as individual person, is not governmental body subject to PIA, but that her "office clearly falls within the meaning of 'governmental body'" as defined by PIA). These cases do not support the Commissioner's position and the Commissioner

---

[14] Both Hearst and the Attorney General submitted affidavits in support of the reasonableness of their attorneys' fees, and the Commissioner does not challenge the reasonableness of those fees on appeal.

has presented no authority from this or any other jurisdiction that does. Consequently, the trial court could have reasonably determined that the County had no reasonable basis in law for withholding the information. In addition, the County failed to comply with the PIA requirements of submitting written statements supporting claimed exceptions and a representative sample of documents, and the Commissioner has equivocated about the existence of responsive information—all actions that the trial court could reasonably have considered when determining whether the County withheld the information in good faith. Therefore, the trial court acted within its discretion when it awarded costs and attorneys' fees to the Attorney General under PIA Section 552.323(b).

For essentially the same reasons, the trial court acted within its discretion when it awarded costs and attorneys' fees to Hearst under Section 552.323(a). Section 552.323(a) provides:

> In an action brought under Section 552.321 or 552.3215, the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails, except that the court may not assess those costs and fees against a governmental body if the court finds that the governmental body acted in reasonable reliance on:
>
> (1)     a judgment or an order of a court applicable to the governmental body;
>
> (2)     the published opinion of an appellate court; or
>
> (3)     a written decision of the attorney general, including a decision issued under Subchapter G1 or an opinion issued under Section 402.042.

Tex. Gov't Code § 552.323(a). As explained above, the trial court could have reasonably determined that the County did not act in reasonable reliance on the appellate court's opinion in *City of Dallas*.

31

Therefore, the trial court acted within its discretion when it awarded fees and costs to Hearst.[15] We overrule the Commissioner's fourth issue.

The Commissioner also asks this Court to clarify the trial court's award of attorneys' fees, asserting that direction is needed as to whether Bexar County or Tommy Adkisson in his individual capacity is ordered to pay fees and costs. The Attorney General and Hearst sought fees from "Tommy Adkisson, Individually and Officially on Behalf of Bexar County, Texas, as County Commissioner Pct. 4, Plaintiff"—i.e, both the Commissioner individually and the County as represented by the Commissioner in his official capacity—and the trial court awarded those fees without apportioning liability.

The underlying request for information was originally delivered to the County, and under the PIA, it was the County's duty to promptly produce the information. *See id.* § 552.221. We have already concluded that the requested information was owned by the County and that the Commissioner, as public-information officer for his County office, collected and maintained the requested information for the County. Consequently, we conclude, under the facts of this case, that when the trial court awarded attorneys' fees to the Attorney General and Hearst, as a matter of law, the award could only be imposed against Bexar County as the governmental body on behalf of

---

[15] The Commissioner's remaining arguments also fail. The Attorney General sought fees under Section 552.323(b), not Section 552.323(a), so the Attorney General's position in Hearst's suit for writ of mandamus is irrelevant to the appropriateness of the trial court's award of fees to the Attorney General under Section 552.323(b). The Commissioner's remaining argument—that Hearst is not entitled to fees because its mandamus petition named only the Commissioner, who is not a governmental body—misrepresents Hearst's pleading. As all the pleadings by all the parties in this suit state, in addition to bringing suit in his individual capacity, the Commissioner brought the suit on behalf of the County, as County Commissioner Precinct 4. Hearst's petition was filed against the sole plaintiff in the suit, the Commissioner, in both his stated capacities.

32

which the Commissioner filed suit and against which Hearst filed its suit. *See id.* §§ 552.321, .3215, .323, .324. Accordingly, we modify the trial court's judgment to reflect that only Bexar County, the governmental body on behalf of which the Commissioner filed suit in his official capacity and against which Hearst filed its suit, is liable for the attorneys' fees awarded under the PIA to the Attorney General and Hearst.

## CONCLUSION

We have determined that the requested information is public information as defined by former Section 552.002 of the PIA and that the trial court did not abuse its discretion by awarding attorneys' fees to Hearst and the Attorney General. However, we modify the trial court's judmgent to reflect that only Bexar County is liable for the attorneys' fees awarded under the PIA to the Attorney General and Hearst, and we affirm the judgment as modified.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Modified and, as Modified, Affirmed on Motion for Rehearing

Filed:   March 6, 2015