**Opinion issued August 27, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00146-CV

_____

## MICHAEL FALLON, M.D., Appellant

## V.

## THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER AND CRAIG HENDERSON, AS OFFICER FOR PUBLIC INFORMATION FOR THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER, Appellees

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2016-10013

## OPINION ON EN BANC RECONSIDERATION

Appellees, The University of Texas MD Anderson Cancer Center and Craig Henderson, as Officer for Public Information for The University of Texas MD Anderson Cancer Center (collectively, the "Cancer Center"), have filed a motion for

en banc reconsideration of this Court's December 20, 2018 memorandum opinion and judgment. *See* TEX. R. APP. P. 49.7. The Court has unanimously voted to grant en banc reconsideration. *See* TEX. R. APP. P. 41.2, 49.7. We withdraw our memorandum opinion and judgment of December 20, 2018, and we substitute this opinion and judgment in their stead.

Appellant, Michael Fallon, M.D., challenges the trial court's orders denying him summary judgment and granting the plea to the jurisdiction of the Cancer Center in Fallon's suit for a writ of mandamus and a declaratory judgment.[1] In four issues, Fallon contends that the trial court erred in denying him summary judgment, granting the Cancer Center's plea to the jurisdiction, and dismissing his declaratory-judgment claim.

We affirm in part and reverse in part.

## Background

In his third amended petition, Fallon alleges that he is an individual residing in New York and the Cancer Center is a "governmental body" of the State of Texas.[2] In October 2015, Fallon, pursuant to the Texas Public Information Act ("PIA"),[3]

---

[1] *See* TEX. GOV'T CODE ANN. § 552.321 ("Suit for Writ of Mandamus"); TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 ("Uniform Declaratory Judgments Act" (the "DJA")).

[2] *See* TEX. GOV'T CODE ANN. § 552.003(1).

[3] *See id.* §§ 552.001–.353.

served the Cancer Center with a public information request, seeking nine categories of information. In the first three categories of information (items 1-3), he sought certain call records of the Cancer Center. In the remaining six categories (items 4-9), he sought the following information from the Cancer Center:

4)     All emails, faxes or other electronic communications to or from the [twelve listed] individuals regarding the MDA affiliation process with Lourdes Hospital, Binghamton NY, the MD Anderson certification actions concerning Michael Fallon MD and any other evaluation of Dr. Michael Fallon for the date range 9/1/2013 to the present[.]

5)     The MD Anderson Physician[s] Network "Radiation Oncology Provider Quality Assessment – *Provisional*" reports for the Radiation Oncologists certified by MD Anderson at the [fourteen listed] institutions *with patient, physician, and institution identifiers redacted*.

6)     Gross affiliation revenue received by MDA from the [fourteen listed] institutions.

7)     Agreement and engagement documentation between MDA and the [seven listed] consultants.

8)     Fees paid to the [seven listed] consultants[.]

9)     Affiliation and discovery/due diligence agreement documentation between MDA and Our Lady of Lourdes Memorial Hospital, Binghamton, NY[.]

In November 2015, Fallon clarified his request. For instance, Fallon made clear that he did not "seek any patient, healthcare provider, or institutional identifiers" in his public information request and that the physicians listed in item 5 referred to certain radiation oncologists listed on the Cancer Center's website.

3

In February 2016, the Cancer Center produced call records in response to the first three categories of information (items 1-3) that Fallon had requested. And it informed Fallon that it did not maintain information responsive to the remaining six categories of information (items 4-9), but it noted that such information might be maintained by a "separate legal entity," i.e., MD Anderson Physicians Network (the "Physicians Network"). (Internal quotations omitted.)

Because the Cancer Center refused to produce information responsive to items 4-9, Fallon seeks a writ of mandamus to compel the Cancer Center to produce information responsive to his public information request.[4] According to Fallon, even if the information he seeks is maintained by the Physicians Network, such information is still "public information" that the Cancer Center must provide under the PIA.[5] Fallon also seeks a declaration that the remaining information that he has requested from the Cancer Center constitutes "public information" under the PIA.[6]

The Cancer Center answered, generally denying the allegations and asserting "sovereign immunity as a defense."

Fallon then filed a matter-of-law summary-judgment motion, arguing that the information he seeks from the Cancer Center, pursuant to the PIA, constitutes

---

[4]     See id. § 552.321 ("Suit for Writ of Mandamus").

[5]     See id. § 552.002(a) (defining "public information" (internal quotations omitted)).

[6]     See TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011.

4

"public information" as a matter of law because it is "written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" for a "governmental body," i.e., the Cancer Center, and the Cancer Center "has a right of access to the information."[7] (Internal quotations omitted.) Fallon attached exhibits to his motion, including the Physicians Network's Amended and Restated Certificate of Formation and a "Form 990" tax return for MD Anderson Services Corporation.

The Cancer Center filed a response and a plea to the jurisdiction, arguing that the trial court lacks subject-matter jurisdiction because the PIA only provides "a limited waiver of sovereign immunity" where "a governmental body . . . has refused . . . to supply public information"; the Cancer Center did not "refuse to supply public information," rather it "released to Fallon all of the public information responsive to his" public information request; and any information that the Cancer Center did not produce does not constitute "public information" under the PIA as it belongs to the Physicians Network, which is a "separate legal entity" and not a "governmental body" under the PIA, the Cancer Center does not own the information, does not have a right of access to the information, and does not spend or contribute public money for the purpose of writing, producing, collecting, assembling, or maintaining the information, and the information that Fallon seeks

_____

[7] *See* TEX. GOV'T CODE ANN. § 552.002(a)(2).

5

does not pertain to the official business of the Cancer Center.[8]  In regard to Fallon's summary-judgment motion, the Cancer Center reiterated that it had not refused to supply Fallon with information responsive to his public information request, the remaining information that Fallon seeks is not "public information," and the Cancer Center does not have a "right of access to the information."  The Cancer Center attached exhibits to its response and plea, including the affidavit of its Vice President of Global Business Development, Amy Hay, and an open records letter ruling of the Texas Attorney General related to the Physicians Network.[9]

In her affidavit, Hay testified, in relevant part:

- "[The Cancer Center] is an agency of the State of Texas and institution of The University of Texas System ('System')."

- "[The Physicians Network] is a private, Texas nonprofit corporation."

- "[The Physicians Network] is a separate legal entity from [the Cancer Center] with an independent certificate of formation."

- "[The Physicians Network] is governed by an independent board of directors comprised entirely of physicians that is responsible for the direction and management of the affairs of the corporation."

- "A primary purpose of [the Physicians Network] is to provide quality improvement and best practices management services to qualified community hospitals through [the Physicians

---

[8]     *See id.*

[9]     *See* Tex. Att'y Gen. OR2016-22964.

6

Network's] Certified Member Program ('Certified Member Program')."

- "Under the Certified Member Program, [the Physicians Network] contracts and affiliates directly with community hospitals ('Certified Members') which pay [the Physicians Network] a fee as compensation for the services [the Physicians Network] provides [to] such hospitals under the[] contracts."

- "[The Cancer Center] is not a party to [the Physicians Network's] contracts with Certified Members, and [the Cancer Center] does not receive fees for the services [the Physicians Network] provides Certified Members or affiliation revenue from [the Physicians Network's] affiliations with Certified Members."

- "[The Cancer Center] does not have an affiliation process or affiliation and discovery/due diligence agreement with Our Lady of Lourdes Memorial Hospital."

- "[The Cancer Center] did not perform any certification actions or other evaluation of Dr. Michael Fallon."

- "[The Cancer Center] has not received gross affiliation revenue from the institutions listed in item 5 of [Fallon's public information request]."

- "[The Physicians Network] contracts directly with [the Cancer Center's] faculty members who serve as consultants for [the Physicians Network] in providing services to Certified Members."

- "[The Cancer Center] is not a party to any contracts between [the Physicians Network] and such consultants, and [the Cancer Center] does not pay or receive fees for the services such consultants provide [the Physicians Network] or Certified Members."

- "[The Cancer Center] does not have consulting agreements with the individuals listed in item 7 of [Fallon's public information request]."

- "[The Cancer Center] did not pay consulting fees to the consultants listed in item 7 of [Fallon's public information request]."

In the open records letter ruling, the Texas Attorney General concluded that the Physicians Network is not a "governmental body" and not subject to the PIA or its disclosure requirements.[10] (Internal quotations omitted.)

In response to the Cancer Center's plea to the jurisdiction, Fallon asserted that the trial court has subject-matter jurisdiction under the PIA and the DJA. Related to the PIA, Fallon asserted that he is entitled to file a suit for a writ of mandamus to compel a "governmental body," i.e., the Cancer Center, to make requested "public information" available when that "governmental body" has refused to do so. According to Fallon, although the Cancer Center produced some information in response to his public information request, it refused to produce information responsive to items 4-9 of his request and such information, even if it is in the possession of the Physicians Network, constitutes "public information" that the

---

[10] *See id.* (determining Physicians Network not sustained by public funds and does not constitute "governmental body" under PIA (internal quotations omitted)).

Cancer Center must produce because the Cancer Center has a right of access to the information.[11]

Before the trial court ruled on the Cancer Center's plea to the jurisdiction and Fallon's summary-judgment motion, the Physicians Network filed a plea in intervention, alleging that it is a non-profit corporation and not a "governmental body" that is subject to the PIA or its disclosure requirements. According to the Physicians Network, it is a separate and distinct legal entity from the Cancer Center with its own board of directors and employees. The Cancer Center "does not direct the business of [the] Physicians Network" and the Cancer Center does not have a right of access to the Physicians Network's "business records and/or other documents and information that are related to [the] Physicians Network's business conducted with other third-party community hospitals." The Physicians Network is primarily focused on improving the quality of cancer care available to private patients in community hospitals throughout the United States, and the vast majority of its revenue comes from its contractual relationships with entities that are not the Cancer Center and that are not governmental bodies. When the Physicians Network "does business with [the] Cancer Center, it does so pursuant to quid pro quo contractual arrangements." (Emphasis omitted.)

---

[11] *See* TEX. GOV'T CODE ANN. § 552.002(a)(2).

9

Further, according to the Physicians Network, it offers four general categories of programs and services to its clients: (1) quality improvement affiliation programs, including its Certified Member Program, (2) an Employer Contracting program, (3) community oncology programs, and (4) strategic advisory and management support services. The purpose of the Certified Member Program "is to help community hospitals improve the quality of oncology care that they provide to cancer patients in their respective communities." As part of the Certified Member Program, the Physicians Network enters into contracts with out-of-state community hospitals and provides oncology quality improvement and best practices services developed by the Physicians Network. These best practices services include "quality evaluation, oncology disease management, quality management, and improvement for oncology services, outcomes measurement and reporting, and peer to peer consultation."

Initially, a community hospital participates in a development phase and enters into a development agreement with the Physicians Network which allows it "to assess the quality of care provided by [the] hospitals and assist [the] hospitals in meeting the requirements of" the Certified Member Program. Subsequently, the community hospital enters into an affiliation agreement with the Physicians Network and pays the Physicians Network a fee for the services that the Physicians Network provides to the community hospital. The services provided by the Physicians

Network under the Certified Member Program are intended to benefit the participating community hospitals and the cancer patients who receive care at those hospitals. The Cancer Center is not a party to the development or affiliation agreements or any other contracts that are part of the Certified Member Program. Information relating to the Certified Member Program is not created and maintained for the Cancer Center. And the Cancer Center does not have a right of access to such information or the Physicians Network's other documents and information related to its business conducted with third-party community hospitals. According to the Physicians Network, any documents related to the Certified Member Program that Fallon seeks are not related to the services the Physicians Network provides to the Cancer Center.

Under the Physicians Network's Employer Contracting program the Physicians Network provides "professional oncology services to enrollees in the contracted employers' health plans . . . through a provider network." The Physicians Network currently maintains employer contractors with two international employers. The Physicians Network alleges that the information that Fallon seeks in his public information request does not relate to its Employer Contracting program.

Related to its community oncology programs, the Physicians Network "employs approximately thirty (30) oncologists who provide direct care to patients

in five (5) satellite oncology centers," "provides medical direction services and physics support services for a gamma knife program operated at a community hospital," and "provides services with respect to radiation oncology centers that are owned and operated by a private hospital system" in Albuquerque, New Mexico. According to the Physicians Network, it provides the Cancer Center with some services through its community oncology programs, but such services are provided pursuant to a quid pro quo contract and the information that Fallon seeks in his public information request does not relate to the Physicians Network's community oncology programs.

Finally, the Physicians Network "provides strategic advisory and management support services to [the] Cancer Center pursuant to arm's-length contractual arrangements." According to the Physicians Network, although it provides the Cancer Center with some strategic advisory and management support services, such services are provided pursuant to a quid pro quo contract and the information that Fallon seeks in his public information request does not relate to the Physicians Network's strategic advisory and management support services.

Moreover, the Physicians Network explains in its plea in intervention that the information that Fallon seeks in items 4-9 of his public information request does not "relate to any work or services that [the] Physicians Network provide[s] to or for [the] Cancer Center." Rather, the information sought by Fallon relates to the

Physicians Network's Certified Member Program, contracts between the Physicians Network and third-party community hospitals, and services provided by the Physicians Network to other third-party community hospitals. In other words, the information sought by Fallon is not "public information" because it was created by the Physicians Network, a non-governmental body. And the information was not created and maintained for a "governmental body," i.e., the Cancer Center, because the information requested relates to the Physicians Network's Certified Member Program and contracts and services that the Physicians Network has provided to third-party community hospitals "to improve the quality of care that they provide to their cancer patients." Still yet, even if the information that Fallon seeks is created and maintained for the Cancer Center, the Cancer Center does not own the information, have a right of access to the information, or contribute public funds for the creation or maintenance of the information.[12]

The Physicians Network further opines that Fallon, through his public information request, is attempting to obtain information responsive to items 4-9 to use in a suit that he has filed against his former employer, Our Lady of Lourdes Memorial Hospital ("Lourdes Hospital"), which is located in New York. According

---

[12] Physicians Network also asserts that even if the information requested by Fallon constitutes "public information" under the PIA, such information is excepted from disclosure. *See id.* §§ 552.101–.159 ("Information Excepted from Required Disclosure").

to the Physicians Network, Lourdes Hospital, several years ago, entered into a Certified Member Program development agreement with the Physicians Network. And under that agreement, the Physicians Network conducted a quality evaluation of Lourdes Hospital's oncology programs and providers through a medical peer review. After Lourdes Hospital terminated its contract with Fallon, Fallon sued the hospital, alleging that the medical peer review conducted by the Physicians Network under its development agreement with Lourdes Hospital resulted in the termination of his contract with the hospital.

After a hearing, the trial court granted the Cancer Center's plea to the jurisdiction, denied Fallon's summary-judgment motion, and dismissed Fallon's suit for a writ of mandamus and a declaratory judgment. The Physicians Network then non-suited its plea in intervention.

## Public Information

In his second and third issues, Fallon argues that the trial court erred in denying him summary judgment and granting the Cancer Center's plea to the jurisdiction because the Cancer Center, a "governmental body" under the PIA, has refused to provide certain information that Fallon requested and the information sought by Fallon in items 4-9 of his public information request constitutes "public information" under the PIA.

14

Notably, in the trial court, Fallon, in his summary-judgment motion, and the Cancer Center, in its plea to the jurisdiction, sought a matter-of-law judgment on the same issue, i.e., whether the information requested by Fallon in items 4-9 of his public information request constitutes "public information" under the PIA. *See* TEX. GOV'T CODE ANN. § 552.002(a) (defining "public information" (internal quotations omitted)). Because the plea-to-the-jurisdiction standard of review mirrors that of a matter-of-law summary-judgment motion in the instant case, we will consider Fallon's second and third issues together, reviewing the trial court's denial of Fallon's summary-judgment motion and its granting of the Cancer Center's jurisdictional plea under a de novo standard that applies to cross-motions for summary judgment. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *Morello v. Seaway Crude Pipeline Co.*, No. 01-16-00765-CV, --- S.W.3d ---, 2018 WL 2305541, at *7 (Tex. App.—Houston [1st Dist.] May 22, 2018, pet. denied) (because jurisdictional plea and summary-judgment motion were effectively cross-dispositive motions, appellate court reviewed under de novo standard of review that applies to cross-motions for summary judgment); *see also Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007) (de novo standard of review for cross-motions for summary judgment).

On cross-motions for summary judgment, each party bears the burden of establishing that he is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278–79 (Tex. 2018). In our review of such cross-motions, we review the summary-judgment evidence presented by each party, determine all issues presented, and render the judgment that the trial court should have rendered. *Id.*; *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004). If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial. *See Univ. of Tex. Health Sci. Ctr. at Hous. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987).

To prevail on a matter-of-law summary-judgment motion, a movant has the burden of establishing that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on his own claim, he must conclusively prove all essential elements of his cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex.,*

16

*N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in the non-movant's favor. *Id.* at 549.

The purpose of the PIA is to provide the public with "complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE ANN. § 552.001(a); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011) (internal quotations omitted); *see also Paxton v. City of Dall.*, 509 S.W.3d 247, 251 (Tex. 2017) (fundamental precept of PIA is that "[t]he people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know" (alteration in original) (internal quotations omitted)). Under the PIA, a "governmental body" must promptly produce "public information" on request unless an exception from disclosure applies and is timely asserted. *See* TEX. GOV'T CODE ANN. §§ 552.101–.159, 552.221; *see also Paxton*, 509 S.W.3d at 251; *CareFlite v. Rural Hill Emergency Med. Servs., Inc.*, 418 S.W.3d 132, 136 (Tex. App.—Eastland 2012, no pet.) (under PIA, "governmental body" required to disclose certain information when requested).

"[P]ublic information" is defined as follows:

information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:

(1)　by a governmental body;

(2)　for a governmental body and the governmental body:

　　(A)　owns the information;

　　(B)　has a right of access to the information; or

　　(C)　spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information; or

(3)　by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body.

TEX. GOV'T CODE ANN. § 552.002(a) (internal quotations omitted).[13]　Whether requested information is "public information" under the PIA is a question of law. *See City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *Harris Cty. Appraisal Dist. v. Integrity Title Co.*, 483 S.W.3d 62, 69 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).　The Texas Legislature has specified that the PIA "shall be liberally construed in favor of granting a request for information."　TEX. GOV'T

---

[13]　The PIA contains a non-exclusive list of categories of "public information" as well. *See id.* § 552.022.

CODE ANN. § 552.001(b); *see also id.* § 552.001(a); *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

Texas Government Code section 552.321 waives sovereign immunity when, as here, a "governmental body" fails to disclose requested information because it does not consider the information to be "public information." *See* TEX. GOV'T CODE ANN. § 552.321; *see also Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 29 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Under such circumstances, a requestor may enforce his statutory right by suing for a writ of mandamus to compel the "governmental body" "to make [the requested] information available." TEX. GOV'T CODE ANN. § 552.321(a); *Nehls*, 522 S.W.3d at 29; *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 694 (Tex. App.—Dallas 2008, no pet.). In the mandamus proceeding, the "governmental body" has the burden to prove that the requested information is not "public information." *Adkisson v. Paxton*, 459 S.W.3d 761, 772 (Tex. App.—Austin 2015, no pet.).

Here, it is undisputed that Fallon, in items 4-9 of his public information request, seeks information related to the Physicians Network's Certified Member Program. And it is undisputed that the Cancer Center does not possess the responsive information. However, as Fallon explains, in items 4-9, he does not seek information possessed by the Cancer Center. Rather, he seeks information possessed

19

by the Physicians Network.[14]   In other words, he does not limit his public information request to "public information" strictly in the possession of the Cancer Center.   Specifically, in items 4-9 of his public information request, Fallon seeks: (4) "electronic communications" regarding the Physicians Network's "affiliation process" with Lourdes Hospital and any "evaluation[s]" of Fallon; (5) the Physicians Network's "reports" for certified "[r]adiation [o]ncologists" at certain Certified Member community hospitals; (6) gross affiliation revenue received by the Physicians Network from certain Certified Member community hospitals; (7) agreement and engagement documentation between the Physicians Network and

---

[14]   We note the Cancer Center asserts that Fallon's public information request does not actually seek information possessed by the Physicians Network; instead, the request seeks information possessed by the Cancer Center.  And the Cancer Center insists that it produced all responsive information in its possession.  According to the Cancer Center, Fallon could have served the Cancer Center with requests seeking information possessed by the Physicians Network, but he did not do so.  Thus, the trial court properly dismissed Fallon's suit for a writ of mandamus because the Cancer Center never "refuse[d] to supply public information" in response to Fallon's public information request.  *See id.* § 552.321(a).  To the extent that the wording of Fallon's public information request created any confusion, Fallon later clarified—in his amended petitions, his summary-judgment motion, and his response to the Cancer Center's plea to the jurisdiction—that he seeks information possessed by the Physicians Network.  Throughout most of this case, the Cancer Center has been aware that Fallon seeks information in the possession of the Physicians Network and that it is Fallon's position that, although the information sought is in the Physicians Network's possession, the Cancer Center must produce such information because the Cancer Center has a "right of access" to it.  *See id.* § 552.002(a) (defining "[p]ublic information" (internal quotations omitted)).  Indeed, in its plea to the jurisdiction, the Cancer Center responded to Fallon's argument that the Cancer Center has a right of access to the information that Fallon seeks, denying that it has any such a right and further arguing that, even if it did, the information still would not constitute "public information" under PIA.

20

certain listed consultants; (8) the fees paid to such consultants; and (9) affiliation and "discovery/due diligence agreement documentation" between the Physicians Network and Lourdes Hospital.

## A. Fallon's Summary-Judgment Motion

In his third issue, Fallon argues that the trial court erred in denying him summary judgment because the information that he seeks in items 4-9 of his public information request to the Cancer Center, although in the possession of the Physicians Network, constitutes "public information" as a matter of law under the PIA. *See* TEX. GOV'T CODE ANN. § 552.002(a).

As previously explained, under the PIA, information still constitutes "public information" if it is "written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business . . . for a governmental body and the governmental body . . . has a right of access to the information." *Id.* § 552.002(a)(2)(B) (internal quotations omitted). Thus, to have prevailed on his summary-judgment motion, Fallon had to prove, as a matter of law, that: (1) the information possessed by the Physicians Network that he seeks in response to items 4-9 of his public information request is "in connection with the transaction of official business" of the Cancer Center, (2) the information is written, produced, collected, assembled, or maintained "for" the Cancer Center, and (3) the Cancer Center has a "right of access to the information." *Id.*

21

Notably, in his summary-judgment motion, Fallon only asserted that the Cancer Center has a "right of access to the information." *See id.* He did not address whether the information is "in connection with the transaction of official business" of the Cancer Center and whether the information is written, produced, collected, assembled, or maintained "for" the Cancer Center. *See Rhône–Poulenc*, 997 S.W.2d at 223 (when plaintiff moves for summary judgment on his own claim, he must conclusively prove all essential elements of his cause of action); *see also Escobedo v. MO-VAC Serv., Co.*, No. 13-16-00435-CV, 2018 WL 3599195, at *4 (Tex. App.—Corpus Christi–Edinburg July 27, 2018, pet. denied) (mem. op.) (trial court improperly granted summary judgment where party did not address each element of affirmative defense in summary-judgment motion).

Because Fallon did not address in his summary-judgment motion or establish in the summary-judgment proceeding below, whether the information possessed by the Physicians Network that he seeks in response to items 4-9 of his public information request is "in connection with the transaction of official business" of the Cancer Center or that the information he seeks is written, produced, collected, assembled, or maintained "for" the Cancer Center, he did not conclusively prove that the information he seeks is "public information" under the PIA. *See* TEX. GOV'T CODE ANN. § 552.002(a)(2)(B) (internal quotations omitted). Accordingly, we hold that the trial court did not err in denying him summary judgment.

We overrule Fallon's third issue.

**B.      Cancer Center's Plea to the Jurisdiction**

In his second issue, Fallon argues that the trial court erred in granting the Cancer Center's plea to the jurisdiction because the Cancer Center did not prove that the information that Fallon seeks in items 4-9 of his public information request, although in the possession of the Physicians Network, is not "public information" as a matter of law under the PIA. *See id.*

We first consider whether the Cancer Center proved, as a matter of law, that the information possessed by the Physicians Network that Fallon seeks is not "in connection with the transaction of official business" of the Cancer Center. *See id.* Under the PIA, "[i]nformation is in connection with the transaction of official business if the information is created by, transmitted to, received by, or maintained by an officer or employee of the governmental body in the officer's or employee's official capacity, or a person or entity performing official business or a governmental function on behalf of a governmental body, and pertains to official business of the governmental body." *Id.* § 552.002(a-1). "Official business means any matter over which a governmental body has any authority, administrative duties, or advisory duties." *Id.* § 552.003(2-a) (internal quotations omitted).

The Cancer Center argues that the information responsive to items 4-9 of Fallon's public information request that is in the possession of the Physicians

23

Network is not "in connection with the transaction of official business" of the Cancer Center because: (1) the Physicians Network is a "separate legal entity" from the Cancer Center, (2) the Physicians Network is not a "governmental body," and (3) the Physicians Network's Certified Member Program "is not the official business" of the Cancer Center.

The Cancer Center has established that the Physicians Network is a "separate legal entity" and not a "governmental body." *See id.* § 552.003(1) (defining "[g]overnmental body" (internal quotations omitted)). However, it has not established that the Physicians Network is not connected to the transaction of official business of the Cancer Center. Indeed, the reason for the existence of Texas Government Code section 552.002(a)(2) is that sometimes "pubic information" may be maintained by private entities. *See, e.g.*, *Adkisson*, 459 S.W.3d at 767–75 (considering whether certain information in "private e-mail accounts" constituted "public information" under PIA).

To support its assertion that the business of the Physicians Network's Certified Member Program "is not the official business" of the Cancer Center, the Cancer Center relies on the testimony of Hay, its Vice President of Global Business Development. In her affidavit, Hay did testify that the Physicians Network's primary purpose is to "provide quality improvement and best practices management services to . . . community hospitals through [its] Certified Member Program," the

24

Physicians Network directly "contracts and affiliates" with the community hospitals which pay it a fee in exchange for the services it provides, the Cancer Center is not a party to, does not receive fees or revenue from any of the Physicians Network's Certified Member Program contracts, and the Cancer Center is not a party to any contracts between the Physicians Network and its consultants who provide services in connection with the Certified Member Program. However, even though the Cancer Center is not a party to the contracts between the Physicians Network, the third-party community hospitals, and the consultants, there is still evidence in the record that the administration of the Certified Member Program may constitute the "[o]fficial business" of the Cancer Center. *See* TEX. GOV'T CODE ANN. § 552.003(2-a) (defining "[o]fficial business" (internal quotations omitted)).

First, MD Anderson Services Corporation's "Form 990" tax return, attached to Fallon's summary-judgment motion, identifies the Cancer Center as the "controlling entity" of the Physicians Network. And if the Cancer Center controls the Physicians Network, then the Cancer Center may have some "authority" over the programs that the Physicians Network administers, including the Certified Member Program. *See id.*

Second, the Physicians Network's Amended and Restated Certificate of Formation, which Fallon attached to his summary-judgment motion, states that the Physicians Network's "sole [m]ember" is the president of the Cancer Center. The

"[s]ole member" has the "right, power, and authority to amend" the Physicians Network's Certificate of Formation. And by appointing the Cancer Center's president as the Physicians Network's "sole [m]ember," the Physicians Network's Amended and Restated Certificate of Formation may indicate that the Cancer Center has some indirect control over the Physicians Network, even though the Network's independent board of directors still has control over the "direction and management of [the Physician Network's] affairs" and the "disposition of its properties and funds." *See* TEX. BUS. ORGS. CODE ANN. §§ 22.151(a) (non-profit corporation can be formed with members or without members), 22.161 (member of non-profit corporation may be entitled to vote at election of directors), 22.351 ("A member of a corporation, on written demand stating the purpose of the demand, is entitled to examine and copy at the member's expense, in person or by agent, accountant, or attorney, at any reasonable time and for a proper purpose, the books and records of the corporation relevant to that purpose."); *see also* TEX. GOV'T CODE ANN. § 552.003(2-a).

Third, the various pages from the Cancer Center's website referenced by Fallon show that there are Cancer Center administrative staff who have administrative or advisory duties over the Physicians Network. *See* TEX. GOV'T CODE ANN. § 552.003(2-a). For example, the Cancer Center employs (1) an Executive Vice President for Administration, who "provides executive oversight"

26

for the Physicians Network, (2) a Senior Vice President, who "provides leadership for a team focused on engaging community hospitals and health care systems across the nation and around the world with the goal of improving the quality of cancer care in those communities," and (3) a Vice President of Operations, who "is responsible for all clinical operations provided to partners at a network of national locations."

These three pieces of evidence, i.e., the "Form 990" tax return, the Amended and Restated Certificate of Formation, and the Cancer Center's website, raise a genuine issue of material fact as to whether the Cancer Center has "authority, administrative duties, or advisory duties" over the Physicians Network's Certified Member Program, thereby indicating that the administration of the Certified Member Program may constitute the Cancer Center's "[o]fficial business" under the PIA. *See id.*; *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221, 227–28 (Tex. 2004). Thus, we conclude that the Cancer Center has not established, as a matter of law, that the information responsive to Fallon's public information request that is possessed by the Physicians Network is not "in connection with the transaction of official business" of the Cancer Center. *See* TEX. GOV'T CODE ANN. § 552.002(a).

Next, we consider whether the Cancer Center proved, as a matter of law, that the Physicians Network does not maintain responsive information "for" the Cancer Center. *See id.* § 552.002(a)(2).

27

According to the Cancer Center, Hay's testimony in her affidavit shows that the responsive information possessed by the Physicians Network is not maintained "for" the Cancer Center; rather, it is maintained "for" the Physicians Network, itself, and the third-party community hospitals and consultants with whom the Physicians Network contracts and affiliates as part of the Certified Member Program.

In her affidavit testimony, Hay establishes two basic facts: (1) the Physicians Network and the Cancer Center are "separate legal entit[ies]" and (2) the Cancer Center is not a party to and does not receive fees or revenue from any of the Physicians Network's Certified Member Program contracts. However, the fact that the Cancer Center and the Physicians Network are separate legal entities does not mean that the Physicians Network does *not* maintain responsive information "for" the Cancer Center. *See id.* As previously stated, "public information" may sometimes be maintained by private entities. *See, e.g.*, *Adkisson*, 459 S.W.3d at 767–75. And even though the Cancer Center is not a party to, and does not receive fees and revenue from the Certified Member Program contracts, there is evidence that the Physicians Network enters into those contracts and ultimately administers the Certified Member Program "for" the Cancer Center. For instance, the Amended and Restated Certificate of Formation states that the Physicians Network "is to be administered solely for the benefit of [t]he . . . Cancer Center . . . by providing, directly or indirectly, assistance and benefit, financial or otherwise, to the [Cancer

28

Center] through whatever means are determined by the [b]oard of [d]irectors, including, but not limited to, making distributions or providing services." And this provision indicates that the Certified Member Program contracts may be benefiting the Cancer Center "indirectly" by furthering the Cancer Center's mission of preventing and treating cancer. Further, it stands to reason that if the Physicians Network is administered "solely" for the Cancer Center's "benefit," then the Physicians Network's programs, including the Certified Member Program, may be administered for the Cancer Center's benefit as well.

Notwithstanding the express language of the Amended and Restated Certificate of Formation, the Cancer Center asserts that the Physicians Network cannot be characterized as administering the Certified Member Program "for" the Cancer Center. Relying on an opinion issued by the Austin Court of Appeals, which, in turn, relies on an opinion of the Texas Attorney General,[15] the Cancer Center asserts that a private entity maintains information "for" a "governmental body" only when the private entity maintains the information "on behalf of," "at the request of," or "under the direction of" the "governmental body." (Internal quotations omitted.) *See Murphy v. City of Austin*, No. 03-04-00332-CV, 2005 WL 309203, at *3 (Tex.

---

[15] *See id.* § 552.306 ("Rendition of Attorney General Decision; Issuance of Written Opinion"); *Tex. Ass'n of Appraisal Dists., Inc. v. Hart*, 382 S.W.3d 587, 591 (Tex. App.—Austin 2012, no pet.) (due consideration may be given to the Attorney General's PIA decisions, but they are not binding).

App.—Austin Feb. 10, 2005, no pet.) (mem. op.) (quoting Tex. Att'y Gen. OR1987-462). The Cancer Center further argues that the Physicians Network does not maintain responsive information "for" the Cancer Center because it did not request or direct the Physicians Network to administer the Certified Member Program. *See id.*

Although there is no evidence that the Cancer Center specifically "request[ed]" or "direct[ed]" the Physicians Network to administer the Certified Member Program,[16] the Amended and Restated Certificate of Formation constitutes evidence that the Physicians Network nevertheless administers the program on behalf of the Cancer Center. To the extent that *Murphy* can be read as supporting a narrower understanding of when a private entity acts "on behalf of" a "governmental body," we respectfully reject such a reading, as it conflicts with the statutory mandate that the PIA be "liberally construed" in favor of disclosure and it ignores subsequent amendments to the statute's definition of public information. *See* TEX. GOV'T CODE ANN. § 552.001(a), (b); *see also* Act of May 24, 2013, 83rd Leg., R.S., ch. 1204, §§ 1–2, secs. 552.002(a-1), 552.003(2-a), 2013 Tex. Gen. Laws 3012, 3012–13 (codified at TEX. GOV'T CODE ANN. §§ 552.002(a-1), 552.003(2-a)).

---

[16] We note, however, that MD Anderson Services Corporation's "Form 990" tax return does state that the Cancer Center is the "controlling entity" of the Physicians Network, and this constitutes some evidence that the Physicians Network may administer the Certified Member Program under the general direction of the Cancer Center.

Notably, these amendments added provisions that broadly define the circumstances under which information is "in connection with the transaction of official business." TEX. GOV'T CODE ANN. § 552.002(a-1), *see also id.* § 552.003(2-a). And they underscore the notion that the PIA's terms should be broadly construed when doing so would further the PIA's policy of favoring disclosure.

Accordingly, we conclude that Fallon has raised a genuine issue of material fact as to whether the Physicians Network maintains information responsive to Fallon's public information request "for" the Cancer Center, and the Cancer Center has not established, as a matter of law, that the Physicians Network does not maintain responsive information "for" the Cancer Center. *See id.* § 552.002(a)(2); *see also Miranda*, 133 S.W.3d at 221, 227–28.

Finally, we consider whether the Cancer Center proved, as a matter of law, that it does not have a "right of access" to the responsive information maintained by the Physicians Network. *See* TEX. GOV'T CODE ANN. § 552.002(a)(2)(B). The Cancer Center argues that it does not have a "right of access" to the information responsive to Fallon's public information request because (1) the Physicians Network is a "separate legal entity" and (2) the Cancer Center is not a party to, and does not receive fees or revenue from, any of the Physicians Network's Certified Member Program contracts.

As discussed above, however, there is evidence indicating that, despite these facts, the Cancer Center has a "right of access" to the responsive information maintained by the Physicians Network. This evidence includes MD Anderson Services Corporation's "Form 990" tax return and the Physicians Network's Amended and Restated Certificate of Formation. As previously noted, the "Form 990" tax return states that the Cancer Center is the "controlling entity" of the Physicians Network. And the Amended and Restated Certificate of Formation states that the Cancer Center's president is the "sole [m]ember" of the Physicians Network with the "right, power, and authority to amend" the Physicians Network's Certificate of Formation. Further, as the Physicians Network's "sole [m]ember," the Cancer Center's president has a right to examine, and, thus, a "right of access" to the Physicians Network's books and records. *See* TEX. BUS. ORGS. CODE ANN. § 22.351. If the Cancer Center has some control over the Physicians Network, and the Cancer Center's president serves as the Physicians Network's "sole [m]ember" with the "right, power, and authority to amend" the Physicians Network's Certificate of Formation and the right to examine the Physicians Network's books and records, it follows that the Cancer Center may have a "right of access" to information in the Physicians Network's possession, both directly and indirectly, through the Cancer Center's president. Although the Cancer Center asserts that "[t]he existence of a relationship between a governmental body and a separate legal entity does not itself

32

establish a specific right of access to [the] particular documents," the "Form 990" tax return and Amended and Restated Certificate of Formation establish more than a mere "relationship" between the Cancer Center and the Physicians Network. Rather, the evidence tends to show that the Cancer Center has a "right of access" to the information that is responsive to Fallon's public information request and that is also in the possession of the Physicians Network.

Thus, we conclude that Fallon has raised a genuine issue of material fact as to whether the Cancer Center has a "right of access" to the information responsive to Fallon's public information request that is in the Physicians Network's possession and the Cancer Center has not established, as a matter of law, that it does not have a "right of access" to the responsive information maintained by the Physicians Network. *See* TEX. GOV'T CODE ANN. § 552.002(a)(2)(B); *see also Miranda*, 133 S.W.3d at 221, 227–28.

In sum, the Cancer Center has not conclusively proved that the information responsive to items 4-9 of Fallon's public information request and that is in the Physicians Network's possession is not "public information" under the PIA. *See* TEX. GOV'T CODE ANN. § 552.002(a) (internal quotations omitted). Accordingly, we hold that the trial court erred in granting the Cancer Center's plea to the jurisdiction related to Fallon's suit for a writ of mandamus to compel the Cancer

Center to produce information responsive to his public information request. *See id.*

§ 552.321 ("Suit for Writ of Mandamus").

We sustain Fallon's second issue.

Fallon's first issue, in which he globally questions whether "a governmental body [can] conceal public information from public inspection by conducting official business through an ostensibly separate but . . . affiliated non-profit organization" is subsumed in our discussion of his second and third issues and needs not be addressed separately. *See* TEX. R. APP. P. 47.1.

Further, we note that, in the prayer for relief portion of his original brief, Fallon requests that we reverse the trial court's order denying his motion to compel and granting the Cancer Center's motion for protective order. However, Fallon does not raise any issue or present any argument directly addressing any alleged error in regard to the trial court's denial of his motion to compel or its granting of the Cancer Center's motion for protective order. To the extent that Fallon attempts to seek such relief, we hold that any issues are inadequately briefed and that Fallon has waived any complaints related to the trial court's denial of his motion to compel or its granting of the Cancer Center's motion for protective order.[17]  *See* TEX. R. APP. P.

---

[17]  In his reply brief, Fallon asserts that he has not waived any complaint regarding the trial court's order related to his motion to compel and the Cancer Center's motion for protective order. And he states that if "the Court renders judgment for [him], the protective order is . . . a nullity" and if "the Court reverses the plea to the jurisdiction and remands [the case] to the trial court, the protective order must be

34

38.1; *CEVA Logistics U.S., Inc. v. Acme Truck Line, Inc.*, No. 01-16-00482-CV, 2018 WL 6694606, at *4 n.10 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) (appellant waived complaint regarding alleged error where it did not present any issue or argument directly addressing error and only attempted to raise complaint in its prayer); *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.) (party who does not adequately brief complaint on appeal waives his issue); *Dove v. Graham*, 358 S.W.3d 681, 685 (Tex. App.—San Antonio 2011, pet. denied) (complaint inadequately briefed where appellant only requested that appellate court "reverse the trial court's order granting the . . . motion to sever" in her prayer and provided no argument or authority to support her request).

---

vacated." The Texas Rules of Appellate Procedure do not allow the inclusion of a new issue in a reply brief. *See* TEX. R. APP. P. 38.3; *M Scott Constr., Ltd. v. Mireles*, No. 14-15-00701-CV, 2016 WL 6990046, at *8 (Tex. App.—Houston [14th Dist.] Nov. 29, 2016, no pet.) (mem. op.); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). And even if not a "new issue," Fallon does not provide the Court with any appropriate analysis, discussion, or support for his assertions that the trial court erred in denying his motion to compel and granting the Cancer Center's motion for protective order. *See* TEX. R. APP. P. 38.1(i); *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.) (conclusory statements are not sufficient and failure to provide substantive analysis of issue or cite appropriate authority waives complaint on appeal). A party who does not adequately brief a complaint on appeal waives his issue. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994); *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677–78 (Tex. App.—Dallas 2004, pet. denied) (appellate court cannot remedy deficiencies in appellant's brief and argue his case for him).

**Declaratory Judgment**

In his fourth issue, Fallon argues that the trial court erred in dismissing his declaratory-judgment claim because the Cancer Center never filed a plea to the jurisdiction or other motion seeking dismissal of the claim for lack of subject-matter jurisdiction. Fallon further argues that, even if the Cancer Center had properly raised the issue, the trial court still erred in dismissing his claim because both the DJA and PIA waive sovereign immunity when, as here, a party, who has submitted a public information request under the PIA, files a separate claim against the "governmental body" seeking a declaration that the information requested constitutes "public information" under the PIA.

Whether a court has jurisdiction is a threshold inquiry that can be addressed by the court sua sponte and at any time. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 146 n.14 (Tex. 2012); *James v. Underwood*, 438 S.W.3d 704, 708 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Holcomb v. Waller Cty.*, 546 S.W.3d 833, 837 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("A court must assure itself that there is jurisdiction to hear a suit."); *DeWolf v. Kohler*, 452 S.W.3d 373, 382 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A court is obliged to determine whether it has subject-matter jurisdiction and must consider the question sua sponte even if it is not challenged by a party."). Thus, the Cancer Center did not need to file a plea to the jurisdiction or any motion for the trial court to consider

whether it has jurisdiction over Fallon's declaratory-judgment claim. *See DeWolf*, 452 S.W.3d at 382–83 (affirming trial court's sua sponte dismissal of claims for lack of subject-matter jurisdiction); *James*, 438 S.W.3d at 708. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226; *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages.[18] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *IT–Davy*, 74 S.W.3d at 853. Absent an express waiver of sovereign or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its subdivisions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Miranda*, 133 S.W.3d at 224–25.

In his third amended petition, Fallon, related to his declaratory-judgment claim, sought a declaration that the information that he requested from the Cancer

---

[18] Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006); *Odutayo v. City of Hous.*, No. 01-12-00132-CV, 2013 WL 1718334, at *2 n.8 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.).

Center constitutes "public information" under the PIA. *See James*, 438 S.W.3d at 708 ("The determination of whether a trial court has subject-matter jurisdiction begins with the pleadings.").

The DJA gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a). And it provides:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*See id.* § 37.004(a). Notably though, the DJA does not provide a general waiver of sovereign immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011); *Tex. Dep't of Ins. v. Green*, No. 01-15-00321-CV, 2016 WL 2745063, at *3 (Tex. App.—Houston [1st Dist.] May 10, 2016, pet. denied) (mem. op.) ("[T]he []DJA waiver of sovereign immunity is narrow." (internal quotations omitted)). Instead, it provides a limited waiver of sovereign immunity for a claim that challenges the validity or constitutionality of a statute and an ordinance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b); *Sefzik*, 355 S.W.3d at 621–22; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009); *Green*, 2016 WL

38

2745063, at *3. Here, Fallon does not seek a declaration concerning the PIA's validity or constitutionality. Instead, he seeks a declaration that construes the PIA and his rights thereunder. Such claims are generally barred as the DJA does not waive sovereign immunity for them. *See Sefzik*, 355 S.W.3d at 621 ("[T]he []DJA does not waive the [S]tate's sovereign immunity when [a] plaintiff seeks a declaration of his . . . rights under a statute or other law."); *City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163, 170–71 (Tex. App.—Austin 2017, pet. filed); *Green*, 2016 WL 2745063, at *3.

We note that Fallon relies on various cases to support his assertion that the DJA waives sovereign immunity for a claim that seeks a declaration of rights under the PIA. *See City of Garland*, 22 S.W.3d at 357–58; *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994); *Town of Shady Shores v. Swanson*, 544 S.W.3d 426 (Tex. App.—Fort Worth 2018, pet. granted); *Kessling v. Friendswood Indep. Sch. Dist.*, 302 S.W.3d 373 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Labrado v. Cty. of El Paso*, 132 S.W.3d 581 (Tex. App.—El Paso 2004, no pet.); *Hays Cty. v. Hays Cty. Water Planning P'ship*, 106 S.W.3d 349 (Tex. App.—Austin 2003, no pet.); *Thomas v. Cornyn*, 71 S.W.3d 473 (Tex. App.—Austin 2002, no pet.); *Dominguez v. Gilbert*, 48 S.W.3d 789 (Tex. App.—Austin 2001, no pet.); *El Paso Cty. Hosp. Dist. v. Gilbert*, 64 S.W.3d 200 (Tex. App.—El Paso 2001, pet. denied).

However, all but one of these cases were decided before the Texas Supreme Court issued its opinion in *Sefzik*, which clarified that (1) governmental bodies are immune from suits under the DJA unless the Legislature has waived immunity for the particular claim at issue and (2) the DJA does not waive the state's sovereign immunity when a plaintiff seeks a declaration of his rights under a statute or other law. 355 S.W.3d at 620–21. Further, the single case, *Swanson*, which was issued by the Fort Worth Court of Appeals after the Supreme Court's decision in *Sefzik*, does not support Fallon's position. Instead, *Swanson* stands for the proposition that, when, as here, a plaintiff sues a governmental entity for a declaration of rights under a statute or other law, that plaintiff must establish a waiver of immunity from some source other than DJA, as the DJA provides no general waiver of immunity. 544 S.W.3d at 436–37 ("The [governmental entity] next argues that the []DJA does not waive governmental immunity when a plaintiff . . . seeks a declaration of her rights under a statute or other law. On this point, the [governmental entity] is correct."). In *Swanson*, the trial court affirmed the trial court's denial of the governmental entity's plea to the jurisdiction related to the plaintiff's declaratory-judgment claim because the plaintiff established a waiver of the immunity under an alternative source, i.e., the Texas Open Meetings Act. *Id.* at 437. Here, by contrast, Fallon has failed to show that the PIA (or any other source) waives sovereign immunity for Fallon's declaratory-judgment claim against the Cancer Center. Indeed, contrary to

Fallon's position in the instant case, since *Sefzik*, courts have held that sovereign immunity bars a declaratory-judgment claim that seeks a declaration of rights under the PIA. *See, e.g.*, *McLane Co. v. Tex. Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 874–76 (Tex. App.—Austin 2017, pet. denied) (affirming trial court's dismissal of declaratory-judgment claim seeking declaration of rights under PIA); *see also Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 706–09 (Tex. App.—Austin 2013, no pet.).

Based on the foregoing, we conclude that Fallon has failed to plead a declaratory-judgment claim over which the trial court has jurisdiction. *See James*, 438 S.W.3d at 708 (plaintiff has burden to plead facts affirmatively showing trial court has jurisdiction). Accordingly, we hold that the trial court did not err in dismissing Fallon's declaratory-judgment claim for lack of subject-matter jurisdiction. Although a plaintiff generally deserves a reasonable opportunity to amend a defective pleading, where, as here, the pleading demonstrates an incurable defect or negates the existence of jurisdiction, the plaintiff need not be afforded an opportunity to amend. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007); *James*, 438 S.W.3d at 708–09.

We overrule Fallon's fourth issue.

## Conclusion

We reverse the portion of the trial court's order granting the Cancer Center's plea to the jurisdiction related to Fallon's suit for a writ of mandamus to compel the Cancer Center to produce information responsive to his public information request. We affirm the portions of the trial court's order dismissing Fallon's declaratory-judgment claim and the trial court's order denying Fallon's motion for summary judgment. We remand the case to the trial court for further proceedings consistent with this opinion.


Julie Countiss
Justice

The original panel consisted of Justices Jennings, Higley, and Massengale.

En banc reconsideration was requested. TEX. R. APP. P. 49.7.

The en banc court consists of Chief Justice Radack and Justices Keyes, Higley, Lloyd, Kelly, Goodman, Landau, Hightower, and Countiss.

The en banc court has unanimously voted in favor of reconsidering the case en banc.

Justice Countiss, writing for the en banc court.